**In re Richard WHITMAN, Nancy Whitman, Debtors.**

**Bankruptcy No. 83–1452–JG.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 2, 1985.

Joseph Szabo, Boston, Mass., trustee.

Paula Bonnell, Boston, Mass., U.S. Dept. of Justice, for trustee.

Henry C. Ellis, Taunton, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

Before the Court is the Chapter 13 Trustee's Motion, brought pursuant to Bankruptcy Rule 2017, to compel examination of the debtor's transactions with his attorneys, Goldstein, Meyers & Chyten ("the Goldstein firm"), and further seeks turnover of monies received by the Goldstein firm except $500. The Court held evidentiary hearings on August 2 and September 19, 1984. The United States Trustee filed a brief and the Goldstein firm chose to file only a one-paragraph statement of its position.

The debtors, Richard and Nancy Whitman ("the debtors" or "Whitman") filed a chapter 13 petition on October 20, 1983. Together with the petition, the debtors filed a Chapter 13 Statement. This reflected that the male debtor, a dentist, now employed as a professor by Boston University, had operated a private dental practice in South Boston from 1972 through 1983. In response to question nine of the Statement which inquired whether any of the debtor's property had been foreclosed, attached or seized, the debtors referred to a sheriff's sale of 1 Shepton Terrace, South Boston, on a $5709 execution obtained by Whitman's landlord, DeGiacomo, and a real estate attachment on the same property by The First National Bank of Boston. The debtors answered "no" to question ten which inquired whether property had been repossessed or seized by any party within ninety days prior to bankruptcy. The Statement, signed by both debtors under the pains and penalties of perjury, was prepared by Attorney Barry Levine of Goldstein, Meyers & Chyten. Also filed with the petition was the Attorney's Statement required under Bankruptcy Rule 2016(b), signed by Arnold Goldstein, which stated that the agreed compensation paid by the debtor prior to the filing of the petition was $1,000. The Attorney's Statement also represented that the attorney had not received a transfer assignment, or pledge of property, and that the attorney

had not agreed to share with any other persons any compensation to be paid.

Dr. Whitman was referred to Attorney Arnold Goldstein by Robert Kuzara, a financial consultant. On August 12, 1983, Goldstein and Whitman first met to discuss the dentist's financial problems. The debtor, at the time, was a defendant in litigation with his landlord and The First National Bank. On the same day, August 12, 1983, Goldstein wrote a letter to Whitman outlining the conditions of retaining the lawfirm for services relative to various financial problems, lawsuits, debts and insolvency proceedings involving an indeterminate amount of legal services. The letter indicated that because the Whitmans lacked funds to pay a retainer for legal services, the parties had agreed that Whitman would provide the lawfirm a security agreement on his dental equipment to:

> "... collateralize all fees now or as may hereinafter be due our firm for services rendered on your behalf..... It is further understood that in the event the collateral is sold or auctioned, we shall as secured party be entitled to all proceeds pursuant to this letter agreement.... The proceeds of any such sale shall be placed in an escrow account... Thereafter we shall be allowed to withdraw ... such sums as are due our firm for services accrued and rendered upon submission of a statement of services. Upon termination of our representation.... we shall render to you any balance thereupon remaining. We may also pay ... any fees due Robert Kuzara Associates and Gary Buseck, Esq. upon your assent ..."

Whitman signed the letter acknowledging that he agreed to its terms. Also on the same day August 12, 1983, Whitman gave the lawfirm a promissory note for $15,000 at 15% per year rate of interest payable on demand. The lawfirm was owed no money on the date of the note. Whitman gave the lawfirm a chattel mortgage to secure repayment of the note on "all dental equipment, fixtures, accessories, tools of the trade and inventory as now owned or hereinafter acquired, including all proceeds thereof on the same date." Shortly thereafter, financing statements perfecting the security interest were filed with the City Clerk and Secretary of State.

Seven days after this first meeting with Whitman and execution of the security agreement, Goldstein, in a letter to the auctioneer Paul Saperstein, referred to a prior authorization to auction Whitman's dental equipment and directed that the proceeds be sent to him. At trial, no written demand for payment of the note was introduced into evidence. On August 24, 1983 a public auction of Whitman's dental equipment was held, which brought $16,783, which was paid to Goldstein. On August 1, 1983, Goldstein paid $3664 to the auctioneer, and on September 22, 1983 and on September 28, 1983 he paid $5700 to Whitman for the purpose of paying bills incurred after the filing of the petition. On November 4, 1983 Goldstein paid Kuzara $1776 and on November 7, 1983 Goldstein paid a former attorney of the debtor (Buseck) $205 for prepetition services rendered Whitman. $5634 plus interest is still held in escrow by Goldstein.

Goldstein testified that when Whitman first consulted him, Whitman had hoped to sell his dental practice for $75,000 and desired to avoid filing a bankruptcy petition. Goldstein suggested an out-of-court workout for Whitman's approximate forty creditors with claims totalling between $80,000 and $100,000. He drafted a letter proposing a composition to creditors proposing to pay creditors between 15% and 20% over two years which was never sent. In mid-October Goldstein decided that a composition was hopeless and made preparations to file a chapter 13 case. Goldstein testified that he has authored three books on bankruptcy law.

The lawfirm submitted as Exhibit 4 an undated statement of services rendered in the Whitman matter from August 12, 1983 until October 19, 1983, which states that Goldstein spent a total of 28.9 hours at a rate of $125 per hour and Levine spent a total of 34.1 hours at the rate of $75 per

hour for a total of $6170 in rendering legal services to Whitman. Added to the bill is a $1000 charge for the chapter 13 case. The total charge according to the statement is $7304 including approximately $130 in expenses. A review of the statement discloses that 1.9 hours was spent preparing the note and security agreement in connection with the lawfirm's fee arrangement and arranging the secured party's sale of equipment with the auctioneer. Approximately eight hours was spent in conferences with Robert Kuzara. Approximately three hours was spent on the telephone with creditors. Over twelve hours were spent in conferences with the client.

On March 22, 1984 the debtors, through Attorney Barry Levine, filed a supplement to their Chapter 13 Statement, which indicated that the Whitmans granted the lawfirm a security interest in the dental equipment, and that the auction proceeds had been applied to monies due the secured party, with no surplus. The Chapter 13 Trustee requested turnover of all funds in the hands of the lawfirm. No funds have been tendered pursuant to the request.

## DISCUSSION

Section 329 of the Bankruptcy Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the sources of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11 or 13 of this title; or

(2) the entity that made such payment.

■ Compensation of debtors' counsel is closely scrutinized because of "the temptation of a failing debtor to deal too liberally with his property in employing counsel", *In re Wood & Henderson*, 210 U.S. 246, 253, 28 S.Ct. 621, 624, 52 L.Ed. 1046 (1908), and because transactions with debtor's attorney provide potential for "evasion of creditor protection provisions of bankruptcy laws" and "overreaching by the debtor's attorney." H.R.Rep. No. 595, 95th Cong. 1st Sess. 329 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6285; *L. King, 2 Collier on Bankruptcy*, ¶ 329.01, at 329–2 (15th ed. Supp.1984) (hereinafter referred to as "2 Collier"). To this end, Section 329 and Rule 2016(b), which implements the statute, requires disclosure of all compensation paid or promised for services rendered in contemplation of or in connection with the case, if the payment or the agreement to pay is made within one year before the filing of the petition, and the source thereof. The statement must be filed in all cases. Services devoted to the prevention of bankruptcy and those required to give advice to the debtor and prepare papers for filing are compensable and may be subject to rexamination. *In re Four Star Terminals*, 42 B.R. 419, 12 B.C.D. 197 (Bankr.D. Alaska 1984).

■ The payment or agreement to pay a debtor's attorney is subject to examination to the extent it exceeds a reasonable amount. 11 U.S.C. § 329(b). Services of a poor quality which are the consequence of wrongful or unethical conduct, may result in denial of any fee or an order for return of any fee paid. *Red Carpet Corp. v. Miller*, 708 F.2d 1576 (11th Cir.1983). Payments made by the debtor to his attorney without complying with the Code's requirements for employment and disclosure also present a basis for ordering return of fees paid. *In re Lavender*, 48 B.R. 393, 396

(Bankr.E.D.Ark.1984). If the consideration was in the form of a transfer of property or a lien thereon, the court may declare the transfer void. *In re Byman Furniture & Interiors, Inc.,* 14 B.R. 230 (Bankr.N.D. Tex.1981).

■■■ Reasonableness of compensation depends on the particular circumstances, requiring attention to the following standards.

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal services properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

*Red Carpet Corp. of Panama City Beach v. Miller,* 708 F.2d 1576, 1578 (11th Cir. 1983), *quoting Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974). Moreover, ethical considerations cannot be separated from the above factors in determining fee awards, since unethical conduct and conflicts of interest will often lessen the value of the services. *In re Smith,* 5 B.R. 92, 6 B.C.D. 506 (Bankr.D.D. C.1980); *In re Devers,* 12 B.R. 140, 7 B.C.D. 277 (Bankr.D.D.C.1981).

■■■ Section 327 requires as a condition of employment as attorney for a debtor, the approval of the court upon a finding that the attorney does not hold or represent an interest adverse to the estate and is a disinterested person. 11 U.S.C. § 327(a). It is the duty of the attorney to reveal all connections, and if he neglects to make proper disclosure, he performs services at his peril. *In re Coastal Equities,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984). A disinterested person is one that does not have a materially adverse interest to the estate by reason of any direct or indirect relationship to or connection with the debtor. 11 U.S.C. § 101(13); *Id.,* at 308. If an undisclosed interest turns out to be adverse, the Court may deny all compensation. *Id.* A creditor of the debtor is not disinterested and is generally disqualified from serving as debtor's counsel.

■■■ In the present case, the evidence presented warrants cancellation of the security agreement between the lawfirm and the debtor and return of a substantial portion of the equipment sale proceeds received by the lawfirm because of instances of overreaching. The lawfirm's requirement of a security interest in the debtor's equipment as a condition of its employment, while in another case may have been proper, must be considered improper here, where a sale of the equipment for the best price possible was the debtor's announced intention when he first consulted the lawfirm. The firm's foreclosure on the equipment, although with the consent of the debtor, and payment to itself of a fee of over $5,000 is an example of the overreaching. The foreclosure deprived the debtor of his ability to sell his major asset—his dental practice, and deprived his creditors of the hope of receiving a dividend in the chapter 13 case. Moreover, at this point, the lawfirm had not yet rendered services approaching the value of $5,000. In arranging this sale, the lawfirm had in mind its own interests rather than the best interests of the debtor and creditors.

■■■ The lawfirm's lack of disclosure concerning the fee arrangement in its filings with this Court is inexcusable. Twice, the attorneys omitted reference to the true arrangement in pleadings filed with the Court. In October 1983 Goldstein executed a statement pursuant to Rule 2016(b) which represented that the debtor had paid him $1000 prior to filing, that the source of the payment was wages, and that he had received no transfer or assignment of property. The statement was erroneous. Goldstein's defense, that Attorney Levine prepared the statement, is unmeritorious because he is responsible for reading the

**508**

document he executed. The Supplement to the Chapter 13 Statement filed in March of 1984 again omits salient facts when it states that there was no surplus from the auction proceeds since they were applied to the amount owed the secured party. This second filing totally ignores the several improper pre-petition and post-petition transfers to creditors of the debtor made by the lawfirm without court authority.

 In this regard, the conduct of Mr. Goldstein and his associate, both experienced bankruptcy practitioners, was totally improper. After the equipment sale but before the petition date, Goldstein disbursed to Dr. Whitman a total of $4,700 on September 22, 1983 and October 13, 1983, and $1,000 after the filing on December 1983, knowing that the debtor intended to use the funds to pay pre-petition debts and with no instructions about preferential transfers. As a result of receiving the proceeds, Whitman made at least four preferential transfers, which should be but are not disclosed in the Chapter 13 Statement in response to question 11 (transfers of property). Moreover, these preferences were not pursued by the attorneys in the chapter 13 case. More importantly, however, the lawfirm after the filing of the bankruptcy, paid professionals who had consulted with the debtor, when the professionals, a lawyer and a financial consultant, were not approved for employment by the Court. These post-petition disbursements for pre-petition liabilities to professionals violated § 327, 330, and § 549 of the Code.

Based upon these considerations the Court declares null and void the fee security agreement reached between the debtor and the lawfirm. The Court will now proceed to determine the appropriate fee to be awarded the lawfirm.

 The statement of services submitted by the lawfirm purports to charge $7,170 for time spent and $134 for expenses. Goldstein's hourly rate is $125 per hour and Levine's rate is $75 per hour. The firm seeks over $2,000 for work in attempting a composition of debt. An experienced Boston bankruptcy attorney,

Richard Kagan, testified at the hearing in this matter that in a case such as Dr. Whitman's debtor's counsel would have known after minimal work that a composition would be unsuccessful. Moreover, here, the composition letter was not even sent. Therefore, I disallow time spent by the Goldstein firm for the composition. The statement of services submitted in support of services rendered is largely deficient. The majority of entries do not contain documentation for or description of the substance of work performed. For instance, it contains numerous telephone conversations with the client and creditors which are totally undocumented. In addition, a review of the statement reveals that several hours were spent and charges are sought for work performed in establishing and protecting counsel's own fee, such as preparation of the fee security agreement and conferences with the auctioneer. The Court's review of the chapter 13 case file reveals that the work mainly consisted of preparation of the petition, statement and plan, which calls for a 15% dividend over three years, which was confirmed in March 1984. No adversary proceedings were brought against or on behalf of the debtors and no creditor sought relief from the stay.

Based on a review of all work performed and results obtained it is my opinion that the firm is entitled to no more than $500, plus the requested expenses of $134. The Court orders the balance of the escrowed sum ($5,000) to be turned over forthwith to the Chapter 13 Trustee.