TIMBERS, Circuit Judge:
 

 The trustee (“appellant”) of Freedom Solar Center, Inc. (“debtor”) appeals from a final judgment entered May 31, 1985 in the District of Maine, Gene Carter,
 
 District Judge,
 
 reversing an order of the bankruptcy court, Frederick A. Johnson,
 
 Bankruptcy Judge,
 
 and permitting Robert G. Frazier, Esq. (“appellee”) to continue to represent in the bankruptcy proceedings the debtor, the debtor’s sole shareholder and a new corporation organized by the sole shareholder. On appeal, appellant contends that the district court erred in holding that, although appellee’s multiple representation was of clients with differing interests as proscribed by Maine Bar Rule 3.4, policy considerations outweighed disqualification. We hold that the debtor’s counsel may not also represent the debtor’s sole shareholder when that sole shareholder is attempting to purchase some of the debtor’s assets and may be liable for preferential transfers. We reverse and direct that the order of the bankruptcy court be reinstated.
 

 I.
 

 We summarize only those facts believed necessary to an understanding of our rulings on the issues raised on appeal.
 

 The debtor is a closely held corporation whose sole shareholder and only officer is Stephen Freeman. Appellee is an attorney who, as debtor’s counsel, on February 15, 1983, filed the debtor’s voluntary bankruptcy petition and asset/liability schedule under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701-766 (1982).
 
 [1]
 
 Appellee had never represented the debtor or Freeman prior to the bankruptcy. About the time of the filing of the petition, however, Freeman engaged appellee to represent Freeman and a new corporation Freeman had organized to pursue a business similar to that of the debtor. It is this multiple representation of the debtor and its sole shareholder that is the crux of the instant case.
 

 On April 7, 1983 appellee told appellant that he represented Freeman individually and the new company and that his clients were interested in purchasing some of the debtor’s assets including office equipment, supplies and the corporate name. Appellant, after some investigation, determined that Freeman might be personally liable to the estate for preferential transfers made by the debtor to third parties in payment of Freeman’s personal debts, just before the filing of the petition. Appellant informed appellee of this possibility. Appellant also refused appellee’s offer to purchase the debtor’s assets at less than their value as listed on the asset schedule, insisting on nothing less than the schedule values. Apparently many of these assets were in Freeman’s possession because appellant next asked appellee to turn them over to her for a public sale. There was a delay in turning over the assets. The parties differ over the cause of the delay, each blaming the other. The fact is that a delay resulted and on June 15, 1983 the bankruptcy judge ordered Freeman to turn over the assets.
 

 Meanwhile, appellant had asked appellee to withdraw from representing Freeman and the new company because she claimed his representation of these clients at the same time he was acting as debtor’s counsel violated Maine Bar Rule 3.4, which prohibits multiple representation of clients with “differing interests”. Appellee refused to withdraw. On June 8, 1983 appellant filed the instant adversary action in the bankruptcy court seeking to have ap-pellee enjoined from representing Freeman or the new company in any matter arising from the bankruptcy proceedings. On September 6, 1984 the bankruptcy judge granted appellant’s motion for summary judgment and ordered appellee to withdraw as
 
 *16
 
 attorney for Freeman and the new company in all remaining bankruptcy proceedings. On appeal to the district court pursuant to 28 U.S.C. § 158(a) (1982),
 
 amended by
 
 Pub.L. 98-353, 98 Stat. 341 (1984), the district court vacated the bankruptcy court’s summary judgment, finding that, although a conflict of interest among appel-lee’s clients did exist, the conflict did not warrant disqualification. Appellant has appealed to this Court from the district court judgment pursuant to 28 U.S.C. § 158(c) (1982),
 
 amended by
 
 Pub.L. 98-353, 98 Stat. 341 (1984).
 

 II.
 

 The ethical duties of lawyers in the District Court for the District of Maine are governed by the Maine Code of Professional Responsibility, which is codified as Maine Bar Rule 3. District of Maine Local Rule 5(d)(2). Maine Bar Rule 3.4 governs the acceptance and continuation of employment. The portion of Rule 3.4 at issue here, sections (c) and (d), is substantially-similar to DR 5-105 of the ABA Model Code of Professional Responsibility. Maine Bar Rule 3.4(c) and (d) provide:
 

 “(c) Multiple Employment Forbidden. A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be, or is likely to be, adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted by subdivision (d) of this rule.
 

 (d) Multiple Employment Permitted. A lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer’s independent professional judgment on behalf of each.”
 

 These sections govern conflicts of interest among current clients. This is not a case of a past representation giving rise to a conflict with a present client, so the “substantial relationship” test does not apply.
 
 Cinema 5, Ltd. v. Cinerama, Inc.,
 
 528 F.2d 1384 (2d Cir.1976). The portion of Rule 3.4 at issue here prohibits a lawyer from representing multiple clients if that multiple representation involves, or is likely to involve, differing interests, absent full disclosure to each client and consent by each client. There are two policies behind this Rule. First, the Rule attempts to promote “absolute loyalty” to each client. Reporter’s Notes, Maine Bar Rule 3.4(b). Second, the Rule is designed to maintain public confidence in the propriety of the legal profession.
 
 I.B.M. Cory. v. Levin,
 
 579 F.2d 271, 283 (3d Cir.1978). A prima facie case for disqualification is made out if the moving party shows that an attorney is representing: (a) multiple clients; (b) with differing interests; and (c) absent full disclosure and consent. We shall address each element separately.
 

 (a)
 
 Multiple Clients
 

 Both courts below found and appellee concedes that he has been representing multiple clients. Clearly, the debtor, its sole shareholder and the new company are all distinct legal entities and separate clients.
 

 (b)
 
 Differing Interests
 

 This term is undefined in the Maine Rule but the Reporter’s Notes make clear that it means not just distinct interests, but adverse interests. Reporter’s Notes, Maine Bar Rule 3.4(b). The bankruptcy court found two adverse interests between the debtor and its sole shareholder, Freeman. First, Freeman’s interest was in delaying the turnover of the assets to use his possession of them as a negotiating chip, while the debtor’s interest was in cooperating with the trustee to achieve the swiftest resolution possible. Second, Freeman’s interest was in purchasing the assets for the lowest possible price, while the debtor’s interest was in selling the assets for the highest possible price. Although appellee disputes the assertion that Freeman’s interest was in delaying the asset turnover, he
 
 *17
 
 concedes that his clients’ interests were adverse over the asset selling price. We agree with the district court that this adversity alone was sufficient to establish a prima facie showing under Rule 3.4(c).
 

 We should point out that there may be another area of adversity. If the trustee does commence an action against Freeman for preferential transfers, Freeman’s interest in protecting himself will be at odds with the debtor’s interest in cooperating with the trustee. Since Rule 3.4(c) speaks in terms of
 
 “likely
 
 to involve” (emphasis added), we think it is proper to include this potential conflict in considering disqualification. It is true that generally the representation of both a debtor and its sole shareholder may not involve adverse interests; but when the sole shareholder desires to purchase estate assets and when the sole shareholder may be the recipient of preferential transfers, adverse interests do result.
 
 See In re Watson Seafood & Poultry Co.,
 
 40 B.R. 436, 442 (Bankr.E.D.N.C.1984) (debtor’s counsel fees denied when it was shown that debtor’s counsel also represented an 80% shareholder of the debtor and a prospective purchaser of the debtor’s assets).
 

 (c)
 
 Full Disclosure and Consent
 

 There appears to have been full disclosure to all concerned parties of the multiple representation. Freeman was fully informed of the situation and the debtor was informed both by the trustee’s knowledge and the knowledge of its sole agent, Freeman.
 

 All concerned parties, however, did not consent to the multiple representation. Assuming that Freeman and the new corporation have consented, it is clear that the debtor has not consented. Once a trustee has been appointed in bankruptcy, all functions traditionally handled by the debtor’s management are subsumed by the trustee.
 
 See Commodity Futures Trading Comm. v. Weintraub,
 
 — U.S. —, —, 105 S.Ct. 1986, 1993 (1985) (trustee, not debtor’s officers, must invoke debtor corporation’s attorney-client privilege). Therefore, only the trustee could consent for the debtor to the multiple representation. Obviously no such consent was given since it was the trustee who commenced this action to end the multiple representation.
 

 III.
 

 Appellant having made out a prima facie case for withdrawal under Rule 3.4(c), the bankruptcy court stopped there and' ordered appellee to withdraw. The district court, however, went on to consider whether the remedy of withdrawal was appropriate. We think it is significant that Rule 3.4(c) is couched in mandatory language, “[a] lawyer shall not ... ”, and on its face the Rule permits no policy balancing once a conflict has been shown. We are not prepared to hold that a court never may consider whether policy weighs against disqualification. However, as in cases in which a prior representation leads to a conflict, doubts should be resolved in favor of disqualification.
 
 I.B.M. Corp. v. Levin, supra,
 
 579 F.2d at 283;
 
 Dodson v. Floyd,
 
 529 F.Supp. 1056, 1061 (N.D.Ga.1981). Surely the policy of avoiding the appearance of impropriety is as much if not more at stake in a multiple representation situation as in a past representation situation.
 

 The district court found that there was no need for disqualification in this case for two reasons. First, the court found that appellee’s representation of the debtor was insignificant. Under the Bankruptcy Code the only continuing duties of the debtor are to cooperate with the trustee and to surrender all estate property and documents. 11 U.S.C. § 521 (1982).
 
 [2]
 
 The district court
 
 *18
 
 reasoned that appellee’s only possible representation of the debtor would be to advise it to cooperate with the trustee and hand over all estate property. The district court found that this representation was so limited and insignificant that any possible conflict would be only “theoretical”, i.e., any pro-Freeman advice appellee might give to the debtor would have no real effect on the debtor’s behavior. Second, the district court found that disqualification would mean that two lawyers instead of one would give Freeman conflicting advice. The court held that, because the conflict was really in Freeman and his dual roles, two lawyers would be no better than one.
 

 We are constrained to disagree with the district court’s reasons for declining to apply Rule 3.4(c) in accordance with its terms. First, the debtor’s counsel’s representation is not necessarily insignificant. Federal law imposes duties on the debtor. In a given case these duties can become onerous and complicated, necessitating truly independent counsel. For instance, the possibility in this case that the trustee may sue Freeman individually for preferential transfers would create a situation in which the debtor’s duty to cooperate and turn over documents might be directly opposed to Freeman’s interest in preventing disclosure. Also, as this case illustrates, the duty to turn over assets can become complicated when an insider in possession seeks to purchase the assets. In these situations, the debtor needs real representation and advice.
 
 [3]
 
 Second, we believe that two lawyers will cure the conflict which Rule 3.4 is designed to prevent. The Rule is aimed at preventing the
 
 lawyer
 
 from having to wear two possibly conflicting hats. The district court’s finding that a conflict will continue to exist in
 
 Freeman
 
 is irrelevant. The Rule is meant to avoid the possibility that appellee will succumb to temptation and give tainted advice. It is beside the point that the tainted advice may not have any effect on the debtor’s conduct. Lawyers should not give such advice. Further, even if no tainted advice were given, we believe that two lawyers will provide more effective assistance in a conflict situation. Independent debtor’s counsel will be keenly aware that his only duty is to the debtor corporation. Independent debtor’s counsel will have the ability, and possibly the duty, to inform the trustee if Freeman as the debtor’s agent refuses to follow the debtor’s counsel’s advice. With appellee representing both Freeman and the debtor, appellee might be barred under the client confidence rules from informing the trustee of Freeman’s nonfeasance. Freeman’s independent counsel, moreover, will be free to give Freeman a wider range of advice.
 

 We think, that appellee’s prophesies of a wholesale proliferation of attorneys smothering small bankruptcy cases are considerably exaggerated. As the bankruptcy judge noted below, this case is different from many other cases involving small closely-held corporations, in which an attorney would not be placed in the uncomfortable position of representing differing interests. In this case, Freeman had organized a new corporation, with the objective of continuing in business and with an interest in purchasing the assets of the debtor corporation. Further, in this case, Frazier, Freeman’s attorney, had been informed that the trustee was planning to pursue an action for preferential transfers, on behalf of the debtor corporation, against Freeman as an individual. This is not a situation that is likely to arise as a routine matter in the majority of bankruptcy cases.
 

 
 *19
 
 We conclude, therefore, that no countervailing policy considerations outweigh the strong presumption in favor of disqualification. In the classic words of Chief Judge Cardozo of more than a half century ago, in a different context, “Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.”
 
 [4]
 
 That is the standard to which we think lawyers in the federal courts should be held under Maine Bar Rule 3.4.
 

 IV.
 

 Although the adverse interests in this multiple representation situation may be characterized as slight, we hold that strict adherence to Rule 3.4 will further its policies and prevent conflicts from escalating. Accordingly, we reverse the judgment of the district court and direct that the order of the bankruptcy court disqualifying ap-pellee from representing Freeman and the new company in the bankruptcy proceedings be reinstated.
 

 Reversed with directions.
 

 [1]
 

 . Although various sections of Chapter 7 were amended by Pub.L. 98-353 (1984), none of those amendments were effective when the instant petition was filed.
 
 See
 
 Pub.L. 98-353 § 553 (1984) (amendments effective for cases filed 90 days after July 10, 1984).
 

 [2]
 

 . Section 521, as in effect when this bankruptcy petition was filed, provided:
 

 “§ 521 Debtor’s duties
 

 The debtor shall—
 

 (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor’s financial affairs;
 

 (2) if a trustee is serving in the case, cooperate with the trustee as necesary to enable the trustee to perform the trustee’s duties under this title;
 

 
 *18
 
 (3) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate; and
 

 (4) appear at the hearing required under section 524(d) of this title.”
 

 [3]
 

 . We also note that under 11 U.S.C. § 328(c) (1982) the bankruptcy court has the power to deny any fees to an estate professional who is shown also to have represented an interest adverse to the estate. Although the issue of fees is not before this Court, we find Congress’s sensitivity to adverse interests persuasive in deciding whether the instant conflict is insignificant.
 

 [4]
 

 .
 
 Meinhard v. Salmon,
 
 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).