USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1971 BERNARD P. ROME, Appellant, v. JOSEPH BRAUNSTEIN, ETC., Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Bernard P. Rome, with whom Rome, George & Klein was on brief _______________ ____________________ for appellant. Isaac H. Peres, with whom Riemer & Braunstein was on brief ______________ ___________________ for appellee. ____________________ March 22, 1994 ____________________ CYR, Circuit Judge. Bernard P. Rome, Esquire, appeals CYR, Circuit Judge. _____________ from a district court order entered on intermediate appeal, affirming a bankruptcy court ruling under Bankruptcy Code 328(c) disallowing Rome's application for fees as court-appointed counsel to chapter 7 debtor Chestnut Hill Mortgage Corporation (CHM) due to disqualifying conflicts of interest. Finding no error, we affirm. I I BACKGROUND BACKGROUND __________ As its longtime corporate clerk and counsel, Rome filed a chapter 11 petition in behalf of CHM in November 1989, followed by an application for Rome's appointment as counsel to the chapter 11 debtor in possession pursuant to Bankruptcy Code 1107(a), 11 U.S.C. 1107(a); see also id. 327(a), 11 U.S.C. ___ ____ ___ 327(a). Thereafter, as counsel to the debtor in possession, Rome filed three abortive chapter 11 reorganization plans propos- ing a 20% dividend to general creditors. Various CHM creditors successfully resisted these initiatives, however, on the ground that the plans would unfairly advantage certain CHM insiders including its president and sole shareholder, Arnold Leavitt, and Leavitt's family and friends by providing priority repayment of their prepetition "loans" to CHM. In August 1990, after all three plans failed to win creditor approval, the bankruptcy court acceded to creditor demands for the appointment of a chapter 11 trustee, appellee Joseph Braunstein, and to Braunstein's reten- 2 tion of Riemer and Braunstein (R & B) as counsel to the chapter 11 trustee. Meanwhile, three months before Braunstein's appointment as the CHM chapter 11 trustee, an involuntary chapter 7 petition had been filed against Arnold Leavitt. Shortly thereafter, while still serving as counsel to CHM in its chapter 11 case, and with bankruptcy court authorization, Rome began to serve as counsel to Arnold Leavitt in the involuntary chapter 7 proceeding. As chapter 11 trustee, appellee Braunstein began negotiations with Rome, by then also representing one Sandra Dickerman, Arnold Leavitt's secretary at CHM, in her ultimately successful bid to purchase property belonging to the CHM chapter 11 estate. In March 1991, less than two months after the bankruptcy court approved the Dickerman acquisitions from CHM, the CHM chapter 11 proceedings were converted to chapter 7 and Braunstein was appointed the CHM chapter 7 trustee. Late in 1991, Braunstein, R & B, and Rome filed appli- cations for compensation and reimbursement of expenses. The Braunstein application, as chapter 11 and chapter 7 trustee, and the R & D application as counsel to the chapter 11 and chapter 7 trustee, approximated $81,000 in fees. The Rome request, as counsel to CHM qua debtor and chapter 11 debtor in possession, ___ approximated $62,000. The applications were opposed by CHM creditors; additionally, Braunstein, as the CHM chapter 7 trust- ee, opposed the Rome application. 3 At the hearing held on these fee applications, Braun- stein represented to the bankruptcy court that he intended to set aside certain prepetition transfers of CHM assets as either preferential or fraudulent. Creditors represented to the court that Arnold Leavitt had "looted" CHM prior to Rome's filing of the CHM chapter 11 petition, by transferring CHM assets to Leavitt family members, and that Rome, in an effort to further Leavitt's interests at the expense of CHM and its creditors, repeatedly "obstructed" creditor efforts to investigate CHM's financial condition and to promote its reorganization. The bankruptcy court ultimately allowed the Braunstein and R & B fee applications in full. On the other hand, the court disallowed the Rome application entirely, on two grounds: (1) Rome's contentious tenure as counsel to the debtor in possession "pro- duced virtually no benefit to creditors and loan participants"; and (2) Rome's concurrent representation of CHM and Leavitt, as well as CHM and Dickerman, was "patently inappropriate." The district court affirmed. II II DISCUSSION DISCUSSION __________ The Bankruptcy Code imposes particularly rigorous conflict-of-interest restraints upon the employment of profes- sional persons in a bankruptcy case. Except as otherwise provided in this section, the trustee, with the court's approval, may ____ ___ _______ ________ employ one or more attorneys, accountants, 4 appraisers, auctioneers, or other profession- al persons, that do not hold or represent an _________ interest adverse to the estate, and that are ________ _______ ___ disinterested persons, to represent or assist _____________ _______ the trustee in carrying out the trustee's duties under this title. Bankruptcy Code 327(a), 11 U.S.C. 327(a) (emphasis added). See Fed. R. Bankr. P. 2014; In re Cropper Co., 35 B.R. 625, 629- ___ _________________ 30 (Bankr. M.D. Ga. 1983) (noting "strict standards" unique to bankruptcy); see also Bankruptcy Code 1107(a), 11 U.S.C. ___ ____ 1107(a) ( 327(a) applicable to counsel representing debtor in possession); In re Roberts, 46 B.R. 815, 822 (Bankr. D. Utah ______________ 1985). Moreover, as the bankruptcy court is invested with ample power to deter inappropriate influences upon the undivided loyalty of court-appointed professionals throughout their tenure, __________ _____ ______ the need for professional self-scrutiny and avoidance of con- flicts of interest does not end upon appointment. The court "may ___ deny allowance of compensation . . . if, at any time during such __ ___ ____ . . . employment . . . , such professional person is not a disinterested person, or represents or holds an interest adverse __________ ________ _______ to the interest of the estate . . . ." Bankruptcy Code 328(c), 11 U.S.C. 328(c) (emphasis added). Thus, section 328(c) authorizes a "penalty" for failing to avoid a disqualifying conflict of interest. See S. Rep. No. 989, 95th Cong., 2d Sess. ___ 39 (1978). 5 Although the Code idiom "interest adverse" is not defined,1 the companion requirement that appointees be "dis- interested" is defined, see Bankruptcy Code 101(14), 11 ___ U.S.C. 101(14), as including, inter alia, one who is "not a _____ ____ creditor, an equity shareholder, or an insider," nor presently, ___ or "within two years before [bankruptcy], a[n] . . . officer _______ . . .of the debtor," and does not have "an interest materially ___ ________ __________ adverse to the interest of the estate or of any class of credi- _______ tors or equity security holders" for "any reason." Id. (emphasis ___ added); see In re Martin, 817 F.2d 175, 179 (1st Cir. 1987). ___ _____________ These statutory requirements disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assis- tance in furtherance of their fiduciary responsibilities.2 ____________________ 1However, an "adverse interest" has been described in pragmatic terms as the "possess[ion] or assert[ion] [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which . . . of them the disputed right or title to the inter- est in question attaches under valid and applicable law; or (2) [the possession of] a predisposition or interest under circum- stances that render such a bias in favor of or against one of the entities." In re Roberts, 46 B.R. at 826-27. _____________ 2Rome argues on appeal that he not only disclosed his position as the clerk of CHM but could reasonably have believed that such a ministerial position would not make him a corporate "insider" within the meaning of Bankruptcy Code 101(31), 11 U.S.C. 101(31). We express no view on these claims, and confine our holding to Rome's impermissible representation of two other clients (Leavitt and Dickerman) with "interests adverse" to the CHM estate which he was responsible for representing by court appointment. 6 In the exercise of its own ongoing affirmative respon- sibility to "root out impermissible conflicts of interest" under Bankruptcy Code 327(a) and 328(c), the bankruptcy court must determine whether any competing interest of a court-appointed professional "created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors an incentive sufficient to place those parties at more than acceptable risk or the reasonable perception of ____ ____ __________ ____ __________ __________ one." Martin, 817 F.2d at 180 (emphasis added). The test is ______ neither subjective, nor significantly influenced by the court- appointed professional's "protestations of good faith," as Rome would have it, see, e.g., supra note 2, but contemplates an ___ ____ _____ objective screening for even the "appearance of impropriety." Id. at 180-81, 182. Finally, if its fact-specific inquiry leads ___ the bankruptcy court to conclude that an impermissible conflict of interest looms or exists, available sanctions include disqual- ification and the denial or disgorgement of all fees. Id. at ___ 182-83. See Bankruptcy Code 328(c), 11 U.S.C. 328(c). We, ___ like the district court, will then review the bankruptcy court's factual findings for clear error and its conclusions of law de __ novo. In re La Roche, 969 F.2d 1299, 1301 (1st Cir. 1992). ____ ______________ The bankruptcy court determined that Rome improperly represented two undisclosed "interest[s] adverse" to the CHM chapter 11 estate Arnold Leavitt and Sandra Dickerman resulting in actual conflicts of interest warranting Rome's retroactive disqualification and forfeiture of all compensation ___________ 7 from the chapter 11 estate. Rome raises three principal chal- lenges to the bankruptcy court ruling. A. The Duty of Disclosure A. The Duty of Disclosure ______________________ First, Rome argues that retroactive disqualification is inequitable in these circumstances, since the bankruptcy court and the trustee tacitly endorsed his representation of Leavitt and Dickerman, pendente lite, or, at the very least, voiced no ________ ____ objection until the filing of his application for compensation in December 1991. Given the relevant findings in this case, howev- er, we are not swayed by Rome's resort to general notions of equity. Although the bankruptcy court has an affirmative duty to exercise vigilance in avoiding impermissible conflicts of interest on the part of court-appointed professionals, see, e.g., ___ ____ In re Anver Corp., 44 B.R. 615, 617 (Bankr. D. Mass. 1984) (once __________________ alerted to potential conflict of interest on part of appointed counsel, the bankruptcy court must raise the issue, sua sponte, ___ ______ in order to safeguard its institutional integrity), normally the professional, especially counsel, possesses ready access to, if not full awareness of, the facts material to any existing or potential competing interest which might conflict with the interests court-appointed counsel must represent, or those which might generate an unacceptable appearance or risk of conflict. As with other prophylactic ethical rules constraining attorney conduct, sections 327(a) and 328(c) cannot achieve their purpose unless court-appointed counsel police themselves in the 8 first instance, especially in circumstances such as these, where the nominal applicant (CHM) for Rome's appointment is a corporate debtor in possession who can only act through its officers and agents here Leavitt, Rome, and Dickerman and may not ___ ___ command the appointee's primary loyalty. See In re Roberts, 46 _______ ___ ___________ _______ _______ ___ ______________ B.R. at 837-39, 846 (duty of disclosure and disallowance of compensation under 327(a) and 328(c) are designed to "prevent 'the dishonest practitioner from [engaging in] fraudulent con- duct, and to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties'") (citation omitted). Thus, as soon as counsel acquires even constructive knowledge reasonably suggest- ing an actual or potential conflict, see id. at 839 (fiduciary ___ ___ duty of disclosure arises as soon as counsel becomes "aware" of facts), a bankruptcy court ruling should be obtained. See, e.g., ___ ____ In re Martin, 817 F.2d at 182 ("There must be at a minimum full _____________ __ _ _______ and timely disclosure of the details of any given arrangement. _______ Armed with knowledge of all the relevant facts, the bankruptcy _________ ___ court must determine, case by case, whether [a conflict ex- ____ __ ____ ists].") (emphasis added); see also In re Huddleston, 120 B.R. ___ ____ ________________ 399, 400-01 (Bankr. E.D. Tex. 1990) ("The case law is clear that the burden of disclosure is upon 'the person making the statement [of qualification for employment] to come forward with facts pertinent to eligibility and to make candid and complete disclo- sure.' . . . '[T]his decision should not be left to counsel, whose judgment may be clouded by the benefits of the potential 9 employment.'") (citations omitted); In re O'Connor, 52 B.R. 892, _______________ 894 (Bankr. W.D. Okla. 1985) (counsel, who disputed existence of disqualifying conflict, requested court's "instructions on how [to] proceed").3 Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr. P. 2014(a), court- appointed counsel proceed at their own risk. See, e.g., In re __ _____ ___ ____ ___ ____ _____ Roger J. Au & Son, Inc., 71 B.R. 238, 242 (Bankr. N.D. Ohio 1986) _______________________ (failure to disclose facts material to potential conflict may provide totally independent ground for denial of fees, quite _______ ___________ apart from the actual representation of competing interests); In __ re Thompson, 54 B.R. 311, 317 (Bankr. N.D. Ohio 1985) (same); In ___________ __ re Whitman, 51 B.R. 502, 507 (Bankr. D. Mass. 1985) (same); In re __________ _____ Guy Apple Masonry Contractors, Inc., 45 B.R. 160, 163 (Bankr. D. ____________________________________ Ariz. 1984) (same); see also In re Kendavis Indus. Int'l, Inc., ___ ____ __________________________________ 91 B.R. 742, 748-49 (Bankr. N.D. Tex. 1988) (summarizing legisla- tive history of 327(a) and 330, noting congressional concern ____________________ 3Of course, disclosure of facts suggesting a conflict is not invariably followed by disqualification. In special circumstanc- es, for example, the bankruptcy court could determine, in the sound exercise of its discretion, that any potential impairment of its institutional integrity, or risk of divided loyalty by counsel, was substantially outweighed by the benefits to be derived from counsel's continued representation of multiple entities or the impracticability of disentangling multiple interests "without unreasonable delay and expense." In re Hoff- ___________ man, 53 B.R. 564, 566 (Bankr. W.D. Ark. 1985). See In re O'Con- ___ ___ ____________ nor, 52 B.R. at 895 (noting countervailing interest in "curtail- ___ ment of administrative expenses" where potential for conflict is dormant or remote). In no event, however, may counsel presume _______ dispensation from the full disclosure required by 327(a) or the sanctions authorized under 328(c). See also Fed. R. Bankr. P. ___ ____ 2014(a). 10 that in earlier corporate reorganization proceedings "the finan- cial well-being of investors and the public [had been] sacrificed to the [corporate] insiders' desire for protection and for profit"). Thus, Rome's failure to make full and spontaneous disclosure of the financial transactions among CHM, Leavitt, and Leavitt's family members shortly before Rome filed the CHM chapter 11 petition, see infra note 5 (and accompanying text); ___ _____ see also Fed. R. Bankr. P. 2014(a), and to obtain explicit court ___ ____ authorization to represent Dickerman, provided sufficient ground for the discretionary denial of compensation under section 328(c). B. The Risk Posed by Competing Interests B. The Risk Posed by Competing Interests _____________________________________ Second, in a bid to vindicate his failure to disclose, Rome claims there was no potential conflict of interest since Leavitt's and Dickerman's interests were never "adverse" to those of the chapter 11 estate. 1. The Leavitt Interests 1. The Leavitt Interests _____________________ Rome argues that section 327(a) does not absolutely prohibit concurrent representation of a corporate debtor in possession and its sole shareholder, absent evidence affirma- tively demonstrating an "actual" as distinguished from a "potential" conflict of interest. Moreover, there could have been no "actual" conflict, he suggests, because: (1) between December 1989 and May 1990, Rome did not represent Leavitt; (2) between May 1990, when the involuntary chapter 7 petition was 11 filed against Leavitt, and August 1990, when Braunstein was appointed the CHM chapter 11 trustee, it was not Rome but the chapter 7 trustee who represented the Leavitt chapter 7 estate; and (3) none of the transfers from CHM to Leavitt prior to CHM's chapter 11 petition have yet been proven improper, preferential or fraudulent. These arguments are specious. The fact that Rome did not represent Leavitt until May 1990 is immaterial, since section 328(c) expressly empowers the bankruptcy court to disallow compensation if court-appointed counsel, "at any time," is either not a "disinterested" person "or represents or holds an interest adverse to the interest of the estate with respect to the matter on which [counsel] is employed." Bankruptcy Code 328(c), 11 U.S.C. 328(c). Rome's post-May 1990 representation of chapter 7 debtor Leavitt, against whom the CHM chapter 11 estate also represented by Rome held claims for the avoidance of alleged preferential and fraudu- lent transfers, created a clear conflict of interest without _______ regard to whether the Leavitt chapter 7 estate itself was repre- ______ __ _______ ___ _______ _______ _ ______ ______ ___ ______ sented by a trustee in bankruptcy. After all, Rome sought ______ __ _ _______ __ __________ compensation for services rendered to the CHM chapter 11 estate, __ ___ ___ _______ __ ______ not to Leavitt, the chapter 7 debtor. Cf. In re Hoffman, 53 B.R. ___ _____________ 564, 565 (Bankr. W.D. Ark. 1985) ( 327(a) is inapplicable to appointment or compensation of counsel to chapter 7 debtor). Yet Rome's representation of Leavitt in the involuntary chapter 7 proceeding plainly undermined confidence in Rome's ability to provide impartial advice to the CHM estate relating to the 12 prospects for recovering the alleged prepetition transfers to Leavitt and Leavitt family members. As concerns Rome's third contention that no trans- fers from CHM to Leavitt prior to CHM's chapter 11 petition have yet been proven improper, preferential or fraudulent we are ______ bound by the bankruptcy court's factual findings unless clearly erroneous. See In re La Roche, 969 F.2d at 1301; In re Martin, ___ ______________ ____________ 817 F.2d at 182-83 (noting that "[t]he bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of [ 327(a)] factors and to make the delicate judgment calls which such a decision entails"); In re Huddleston, 120 B.R at ________________ 402-03 (favoring case-by-case analysis). And since section 327(a) is designed to limit even appearances of impropriety to the extent reasonably practicable, doubt as to whether a particu- lar set of facts gives rise to a disqualifying conflict of interest normally should be resolved in favor of disqualifica- tion. Cf. In re Freedom Solar Ctr., Inc., 776 F.2d 14, 17 (1st ___ _______________________________ Cir. 1985).4 Even if we were to set to one side Rome's unexplained failure at the outset to apprise the bankruptcy court of facts that might generate an appearance of impropriety, the bankruptcy _____ court's section 328(c) ruling is well supported by the record. ____________________ 4Although In re Freedom Solar involved an application of the ___________________ Maine Bar Rules in a bankruptcy proceeding, we cite to it throug- hout this opinion in contexts legitimately informed by its closely analogous discussion. See, e.g., In re Kendavis, 91 B.R. ___ ____ ______________ at 752 ("The Bankruptcy Code provisions dealing with conflicts of interest find their counterparts in the ABA Code of Professional Responsibility."); In re Roberts, 46 B.R. at 829-37 (same). _____________ 13 As the bankruptcy court was informed at the hearing on the fee applications, see supra at p. 4, CHM creditors had commissioned ___ _____ the Peterson Report, a pre-chapter 11 investigation into CHM's financial condition, which disclosed that Arnold Leavitt had caused large prepetition transfers from the CHM treasury to himself and immediate family members.5 In addition, Rome had shown considerable intransigence to efforts by Peterson to obtain access to certain CHM records, even informing Peterson that access must await "litigation" and "discovery." See In re ___ ______ Martin, 817 F.2d at 182 (noting relevance of "adverse" interests ______ which threaten "to hinder or to delay the effectuation of a [reorganization] plan"); cf. In re Freedom Solar, 776 F.2d at 16 ___ ___________________ (noting shareholder interest "in delaying the turnover of the assets [in order] to use his possession of them as a negotiating chip, while the debtor's interest was in cooperating with the trustee to achieve the swiftest resolution possible"); In re ______ Kendavis, 91 B.R. at 750-51 (describing counsel's resort to ________ dilatory "scorched earth" tactics in behalf of insiders "adverse" to debtor). Coupled with the preferential "insider" terms proposed in the three CHM chapter 11 reorganization plans Rome presented to CHM creditors, his continued participation promoted ____________________ 5Appellee Braunstein, the CHM chapter 7 trustee, represented to the bankruptcy court that he had objected to Leavitt's chapter 7 discharge, and was preparing to initiate an adversary proceed- ing against Leavitt's wife and son to recover an automobile allegedly transferred to Leavitt by CHM a few months before Rome filed the chapter 11 petition in behalf of CHM. Cf. In re ___ ______ Freedom Solar, 776 F.2d at 17 (potential adverse interest looms ______________ where shareholder of corporate debtor may have received preferen- tial transfer). 14 the readily foreseeable perception that he was attempting to insulate Leavitt's personal and family financial interests at the expense of the CHM chapter 11 estate and its creditors. See id. ___ ___ at 750 (internal corporate communication suggested that attorneys improperly represented family controlling debtor corporation, and not their client of record the debtor); In re Hoffman, 53 B.R. _____________ at 565 (first loyalty of corporate debtor's counsel must lie with corporation, not with its individual officers). 2. The Dickerman Interests 2. The Dickerman Interests _______________________ Rome argues, in a similar vein, that after Braunstein's appointment as the CHM chapter 11 trustee in August 1990, Braunstein alone represented CHM's interests. Thus, as a matter __ _ ______ of law, there could have been no disqualifying "conflict of __ ___ interest" in Rome's concurrent representation of Dickerman in her successful purchase of CHM's assets. Moreover, even as a factual matter, he argues, there could have been no actual conflict because Dickerman was the only bidder and the sale benefited both ____ buyer and seller. As with other arguments insistently advanced by Rome, this one presupposes that there can be no disqualifying conflict absent proof of actual loss or injury. On the contrary, simulta- ______ ____ __ ______ neous representation of the buyer and the seller in the same transaction is a prototypical disqualifying conflict of interest even if it is not invariably disqualifying in all circumstances. See In re Tidewater Memorial Hosp., Inc., 110 B.R. 221, 228-29 ___ _____________________________________ (Bankr. E.D. Va. 1989) ("[D]ouble representation [in acquisition 15 of debtor's assets] can be allowed, if at all, only under the strictest adherence to the statute and regulations," including full disclosure.). Even if Dickerman was the highest bidder for __________ these CHM assets, or even the only one, Rome's longtime position as corporate clerk and counsel to CHM, both prepetition and postpetition, presumably afforded him unique access to inside information concerning the nature and value of its assets, information that Rome could have used (or been tempted to use) to enable his other client Dickerman to submit a better calibrated bid than arm's-length bidders could venture, thereby potentially chilling bidding at the expense of CHM and its creditors. Cf. In re Freedom Solar, 776 F.2d at 16 (corporate ___ ____________________ debtor's shareholder had legitimate interest in buying assets at lowest possible price; debtor in selling at highest price). Furthermore, counsel to a chapter 11 debtor owes continuing ______ loyalty to the debtor throughout the chapter 11 proceedings; ______ appointment of a chapter 11 trustee does not end counsel's obligation to the debtor entity. See id. at 18 (noting that ______ ______ ___ ___ "[f]ederal law imposes enduring duties on the debtor . . . [and] [i]n these situations, the debtor needs real representation and advice"; ethical rules are designed "to avoid the possibility that [the attorney] will succumb to temptation and give tainted advice"). In our considered view, therefore, Rome's unauthorized representation of Dickerman generated a palpable appearance and risk of divided loyalties, see In re Thompson, 54 B.R. at 316, ___ ______________ 16 placing the CHM estate at "more than acceptable risk," In re _____ Martin, 817 F.2d at 180. ______ C. Severity of Sanction C. Severity of Sanction ____________________ Finally, Rome argues, even if the bankruptcy court supportably determined that he represented "adverse" interests that should have been disclosed ab initio, the most it should __ ______ have done is reduce his compensation since there is no evidence that any conflict of interest, however suspect in appearance, actually harmed the chapter 11 estate or its creditors, and the ________ trustee concedes that Rome provided "valuable services" to the estate.6 An attorney retained pursuant to section 327(a) assumes a fiduciary responsibility to refrain from rendering any unautho- rized service in furtherance of an interest adverse to the client he serves by court appointment. See In re Kendavis, 91 B.R. at ___ ______________ 753 (citing Wolf v. Weinstein, 372 U.S. 633, 641 (1963)). "A ____ _________ fiduciary . . . may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one." Woods v. City _____ ____ Nat'l Bank & Trust Co., 312 U.S. 262, 269 (1941); In re Roger J. _______________________ ______________ ____________________ 6We need not address Rome's argument that it was inequitable to allow the Braunstein and R & B fee applications in full, yet disallow Rome's application in full. Rome informed the bankrupt- cy court that he was "not opposed" to the Braunstein and R & B fee applications. Hence, the reasonableness of the former ruling is an issue which has been waived. See Mark Bell Furni- ___ ________________ ture Warehouse, Inc. v. D.M. Reid Assocs., Ltd. (In re Mark Bell _____________________ _______________________ _______________ Furniture Warehouse, Inc.), 992 F.2d 7, 9 (1st Cir. 1993). _________________________ 17 Au, 71 B.R. at 241. Especially where there has been a clear __ failure to make timely and spontaneous disclosure of all facts material to a disqualifying conflict of interest, counsel ap- pointed pursuant to section 327(a) can lay no claim of right to a _____ __ _____ __ _ lesser sanction than the bankruptcy court is authorized to impose ______ ________ pursuant to section 328(c). Like other courts which have considered the issue, however, we adopt no per se or brightline rule invariably ___ __ requiring denial of all compensation under section 328(c).7 _________ Nevertheless, based on its familiarity with the CHM proceedings, the bankruptcy court in this case acted well within its discre- tion in finding that Rome's services "produced virtually no benefit." See, e.g., Bankruptcy Code 330(a)(1), 11 U.S.C. ___ ____ 330(a)(1) (compensation may be based on assessment of "the value of such services"); In re Kendavis, 91 B.R. at 762 (reduc- ______________ ing fees by 50% for conflict of interest, but citing "exceptional circumstances"); In re Whitman, 51 B.R. at 506 (noting that _______________ "results obtained" are relevant consideration). Furthermore, where court-appointed counsel has served under an undisclosed ____________________ 7See, e.g., In re Kendavis, 91 B.R. at 762 (general rule ___ ____ _______________ favors total denial of compensation, but equities may allow lesser sanction as facts warrant); In re Roger J. Au, 71 B.R. at _________________ 242-43 (since 328(c) says "may deny," the bankruptcy court retains discretion to depart from general rule of total denial, where equities demand); In re GHR Energy Corp., 60 B.R. 52, 68 _______________________ (Bankr. S.D. Tex. 1985) (penalty for 327(a) conflict may be adjusted to reflect gravity of breach); In re Roberts, 46 B.R. at _____________ 846-48, 850 (same, noting that bankruptcy court is court of equity). But cf. In re Chou-Chen Chems., Inc., 31 B.R. 842, 850- ___ ___ ____________________________ 51 (Bankr. W.D. Ky. 1983) (favoring denial of all compensation if conflict exists, regardless of benefit from services rendered). 18 disqualifying conflict of interest, the bankruptcy court cannot always assess with precision the effect the conflict may have had either on the results achieved or the results that might have been achieved by following "the road not taken." See Woods, 312 ___ _____ U.S. at 269 ("[T]he incidence of a particular conflict of inter- est can seldom be measured with any degree of certainty [and [t]he bankruptcy court need not speculate as to [] the result of the conflict . . . ."); In re Tidewater, 110 B.R. at 229 (denying _______________ compensation even though there was "[n]o doubt the law firm performed valuable services in the chapter 11 case").8 Yet as an appellate court, we are poorly positioned to second-guess a bankruptcy court's judgment call in these circumstances, and neither we nor the district court have been shown any reason for doing so in the present case. The district court judgment is affirmed. The district court judgment is affirmed. _______________________________________ ____________________ 8For example, the bankruptcy court observed that Rome's role as counsel to CHM, qua debtor in possession, generated vigorous ___ opposition to all three reorganization plans, as well as unusual- ly intense antagonism from CHM's general creditors (including Rome's longtime law partner). The clear implication, unverifi- able in hindsight, is that CHM's reorganization prospects may have been better but for Rome's insistence on serving three clients simultaneously in these proceedings. In re Kendavis, 91 _______________ B.R. at 748 ("[E]thical violations or conflicts of interest may lessen the value of services. If an attorney holds an undis- closed adverse interest, a court is empowered to deny all compen- sation.") (citation omitted); In re Whitman, 51 B.R. at 507 _______________ (same). Retrospective damage assessments are made all the more difficult where counsel has labored under several simultaneous conflicts of interest. 19