STRAUB, Circuit Judge:
 

 Plaintiff-Appellant David R. Kittay, the trustee in a Chapter 7 bankruptcy proceeding of debtor Luckey Platt Centre Associates (“Luckey Platt”), appeals from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, Judge), dismissing his complaint against Daniel J. Kornstein and Kornstein’s law firm, Korn-stein Veisz
 
 &
 
 Wexler (collectively “Korn-stein”). Kittay’s complaint alleges that Kornstein breached his fiduciary duties and contractual obligations and committed legal malpractice by serving as special counsel to Luckey Platt in its bankruptcy proceeding while simultaneously representing Burstin Investors (“Burstin”), an entity competing with Luckey Platt for proceeds of a New York state court judgment against Luckey Platt’s former general partner. These breaches, Kittay alleges, prevented Luckey Platt from collecting
 
 *535
 
 the state court judgment, resulting in a loss to the estate of approximately nine million dollars.
 

 The District Court granted Kornstein’s motion to dismiss, partly on the merits and partly with leave to replead. The District Court found that Kittay’s allegations that Kornstein impermissibly represented multiple clients failed to state a claim upon which relief can be granted, and thus dismissed those claims with prejudice under Federal Rule of Civil Procedure 12(b)(6). The District Court then found that Kit-tay’s allegations regarding improper actions taken by Kornstein after appeal of the state court judgment could state a claim for relief, but were not pleaded in a clear and straightforward fashion. The court thus dismissed those claims with leave to replead. Kittay disclaimed intent to replead, allowing review in this Court.
 

 For the reasons given below, we conclude that Kittay’s allegations regarding Kornstein’s multiple representation fail to state a claim upon which relief can be granted. We find, however, that Kittay’s allegations regarding Kornstein’s conduct after appeal of the state court judgment were adequately pleaded.
 

 Accordingly, we affirm in part, vacate in part, and remand for further proceedings.
 

 BACKGROUND
 

 Taking the plaintiffs allegations to be true, as we must on review of a grant of a motion to dismiss,
 
 see Boyd v. Nationwide Mut. Ins. Co.,
 
 208 F.3d 406, 409 (2d Cir.2000), the record reveals the following events.
 

 I.
 
 The New York State Court Action
 

 Luckey Platt, a real estate development firm, was a limited partnership consisting of K.N. Investors, Ltd. (“KNIL”) as sole general partner and Burstin as sole limited partner. Nachum Kalka controlled KNIL. In 1990, Burstin, represented by Korn-stein, sued KNIL and Kalka in New York state court for fraud, breach of fiduciary duty, and other tortious conduct relating to KNIL’s misconduct as general partner of Luckey Platt. The suit’s claims were also brought derivatively for the benefit of Luckey Platt. That is, Luckey Platt was named as a nominal defendant, but the claims in the state court complaint were brought partly for the benefit of the partnership.
 

 In March 1996, Burstin recovered a judgment in the state court awarding approximately nine million dollars, removing KNIL as general partner of Luckey Platt, appointing Burstin as receiver of Luckey Platt, and declaring Kalka personally liable for all of Luckey Platt’s debts to third-parties. KNIL immediately appealed from this judgment, filing its notice of appeal also on behalf of Luckey Platt, inasmuch as Luckey Platt was a nominal defendant in the action. Luckey Platt, however, asserts that Kornstein actually represented Luckey Platt in the state court action, since Kornstein represented Burstin and Burstin had asserted derivative claims on behalf of Luckey Platt. In any event, the parties briefed the case between June and August 1996. In its briefs, KNIL argued,
 
 inter alia,
 
 that if a judgment were to be awarded, it should belong to the Luckey Platt partnership, not Burstin.
 
 [1]
 
 Burstin, through Kornstein, argued in its brief,
 
 inter alia,
 
 that the judgment in favor of Burstin was proper.
 

 II.
 
 Luckey Platt’s Bankruptcy and the Retention of Kornstein
 

 In May 1996, during the pendency of the appeal of the state court judgment, Luckey Platt filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101
 
 et seq.
 
 It retained Tracy Klestadt as its bankruptcy counsel. Kornstein, however, had been representing Luckey Platt in a mortgage foreclosure action brought by Bank Leumi in connection with property Luckey Platt owned. Knowing
 
 *536
 
 that Kornstein was intimately familiar with the Kalka matter and that Kornstein already represented it in the Bank Leumi matter, Luckey Platt moved, soon after filing its bankruptcy petition, to retain Kornstein as special counsel in the bankruptcy proceeding. In October 1996, after briefing but before oral argument of the state court appeal, the Bankruptcy Court for the Southern District of New York (Jeffry H. Gallet,
 
 Bankruptcy Judge)
 
 appointed Kornstein as special counsel to Luckey Platt to pursue claims related to the state court action against Kalka, as well as claims involving Bank Leumi. The appointment, made pursuant to 11 U.S.C. § 327(e), occurred after a hearing at which the parties discussed Kornstein’s potentially conflicting roles as counsel to Burstin in the state court appeal and special counsel to Luckey Platt in the bankruptcy action. KNIL and Bank Leumi objected to Korn-stein’s retention, asserting that Kornstein would argue that the state court judgment was properly awarded to Burstin. The court nonetheless appointed Kornstein as special counsel to Luckey Platt, noting that Luckey Platt and Burstin had the common goal of pursuing the assets of KNIL and Kalka and that, absent Korn-stein, Luckey Platt would be unable effectively to pursue its claims against KNIL and Kalka. The court resolved the potential conflict by ruling in a retention order that recoveries against KNIL or Kalka would be placed in escrow with Kornstein, subject to the Bankruptcy Court’s later determination as to who would be entitled to what amounts. The court conditioned Kornstein’s retention on Burstin’s agreement to the escrow order, which Burstin provided. Luckey Platt, represented by Klestadt, did not object to the court’s decision.
 

 III.
 
 The State Court Appeal and Its Aftermath
 

 Oral argument in the state court appeal took place in January 1997. At argument, Kornstein asserted, consistent with his brief, that Burstin, and not necessarily Luckey Platt, should be awarded the state court judgment. Luckey Platt was not separately represented in the appeal. In May 1997, the Appellate Division essentially affirmed the state trial court, with a slight modification by which $91,000 (about 1% of the judgment) was shifted from Bur-stin to Luckey Platt.
 

 Burstin then attempted to enforce the judgment against Kalka. Burstin retained an attorney in Israel, Avigdor Klagsbald, to search for assets Kalka owned in that country. Klagsbald located shares of stock and real property owned by Kalka, but was unable to seize them because the New York judgment was not yet final due to an attempt to mount a subsequent appeal. Upon discovering that Kalka was planning to sell his stock, Klagsbald decided to bring an action in Israel on the New York judgment to enjoin Kalka’s planned stock sale. Klagsbald turned to Kornstein for information regarding the state court judgment and the New York court system, and Kornstein obliged with information and various documents. Kornstein also prepared an affidavit to be used in the Israeli proceeding.
 

 Klagsbald succeeded in enjoining Kalka from selling his stock, and also obtained an attachment with respect to Kalka’s real estate in Israel. As a result, over $16 million of Kalka’s assets were frozen. Kal-ka thereupon decided to enter into a settlement with Burstin through Klagsbald in January 1998, pursuant to which Kalka agreed to pay the full amount of the judgment — over nine million dollars — to Bur-stin.
 

 Soon thereafter, in February 1998, Luckey Platt’s Chapter 11 proceeding was converted into a Chapter 7 liquidation, and Kittay was appointed trustee. Kittay moved, and the Bankruptcy Court ordered, that Burstin’s settlement with Kalka should be deposited into escrow, pursuant to the Bankruptcy Court’s retention order. Several months passed, however, without the settlement being placed in the escrow
 
 *537
 
 account, due to various ministerial obstacles and other delays. During that time, Kornstein engaged in discussions with Klestadt and Burstin regarding the possibility of dismissing Luckey Platt’s bankruptcy case so as to avoid the effect of the escrow order. Ultimately, no action was taken to dismiss the bankruptcy case, but, as it turns out, the proceeds of the Israeli settlement were never placed in the escrow account. In August 1999, Kittay entered into a settlement with Burstin pursuant to which Luckey Platt was paid $687,500 out of the nine million dollars recovered from Kalka. In an application for approval of the settlement, Kittay wrote that the settlement amount “is not merely substantial in its own right but also a very good deal for the estate in view of all the circumstances of this case” and that “this is still an excellent settlement for the estate and its creditors.” The settlement was approved by the Bankruptcy Court.
 

 IV.
 
 The Current Action
 

 Kittay then commenced this action against Kornstein. In his complaint, Kit-tay claims that by representing both Luck-ey Platt and Burstin, Kornstein placed himself in a conflict of interest position and impermissibly favored Burstin in the state court appeal. Moreover, Kittay argues, after the state court appeal, Kornstein acted improperly in helping to collect the state court judgment for Burstin while doing nothing on behalf of, and, indeed, acting to the detriment of, Luckey Platt. The District Court dismissed the complaint on two grounds. First, regarding Kornstein’s representation of both Luckey Platt and Burstin, the court found that a conflict “did not exist, and could not exist,” by virtue of the Bankruptcy Court’s retention order. The order, the court held, resolved any conflict, and as a result “it did not matter in whose favor the Appellate Division would grant judgment.” Second, regarding Kornstein’s post-appeal actions, the court held that Kittay’s allegations could state a legally sufficient claim for relief, but found that those allegations were not pleaded “in a clear and straightforward fashion,” causing “unnecessary confusion in understanding plaintiffs theories.” Accordingly, the District Court dismissed the complaint with prejudice with regard to the allegations of impermissible conflict, and dismissed the complaint without prejudice and with leave to replead with regard to the allegations based on Kornstein’s conduct following the Appellate Division ruling.
 

 Kittay filed a notice of intent not to replead, rendering the District Court’s judgment final. This timely appeal followed.
 

 DISCUSSION
 

 I.
 
 Dismissal as to Claims Regarding the Alleged Conñict of Interest
 

 “We review a district court’s grant of a motion to dismiss
 
 de novo,
 
 assuming the truth of all factual allegations contained in the complaint and drawing all reasonable inferences in the plaintiffs favor.”
 
 Boyd v. Nationwide Mut. Ins. Co.,
 
 208 F.3d 406, 409 (2d Cir.2000). “A dismissal under Rule 12(b)(6) for failure to state a cognizable claim may be affirmed only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.”
 
 Id.
 
 (internal quotation marks omitted). “To survive a motion for dismissal under Rule 12(b)(6), the complaint must allege facts that, if true, would create a judicially cognizable cause of action.”
 
 South Road Associates v. International Business Machines Corp.,
 
 216 F.3d 251, 253 (2d Cir.2000).
 

 Under the New York rules of professional conduct, a lawyer generally cannot simultaneously serve clients with conflicting interests.
 
 [2]
 
 “A lawyer shall de-
 
 *538
 
 dine proffered employment” and “shall not continue multiple employment” if “the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected” by the acceptance of employment or representation of another client, “or if it would be likely to involve the lawyer in representing differing interests.... ” N.Y.Code of Professional Responsibility DR 5-105(a) & (b),
 
 reprinted in
 
 N.Y. Jud. Law App. (McKinney 1992).
 
 [3]
 
 However, at the time of the events in this case, a lawyer could represent multiple clients “if it [was] obvious that the lawyer [could] adequately represent the interest of each and if each consented] to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer’s independent professional judgment on behalf of each.” N.Y.Code of Professional Responsibility DR 5—105(c), repr
 
 inted in
 
 N.Y. Jud. Law App. (McKinney 1992)
 
 [4]
 
 ;
 
 see also Oneida of Thames Band v. New York,
 
 757 F.2d 19, 22 (2d Cir.) (noting that “clients may give informed consent to joint representation despite actual or potential adverse interests”),
 
 cert. denied,
 
 474 U.S. 823, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985).
 

 The first question, then, is whether a conflict situation existed when Luckey Platt sought to retain Kornstein. We believe that a close analysis of the professional responsibility rules leads to the conclusion that, initially, a conflict of interest did exist. Given that Luckey Platt and Burstin were competing for the same pot of money, Kornstein faced a situation in which he represented “differing interests.” N.Y.Code of Professional Responsibility DR 5-105(a),
 
 reprinted in
 
 N.Y. Jud. Law App. (McKinney 1992). Nonetheless, we believe that the Bankruptcy Court’s retention and escrow order effectively resolved this conflict by, essentially, eliminating any incentive to compete. By acting in a manner that it believed would increase the chance of recovery, and by assuming the task of allocating that recovery, the Bankruptcy Court aligned the interests of Luckey Platt and Burstin for purposes of the state court appeal.
 
 See In re AroChem Corp.,
 
 181 B.R. 693, 703 (Bankr.D.Conn.1995) (finding that agreement to pool proceeds from judgment for later allocation cured a conflict resulting from rivalry over the judgment),
 
 aff'd,
 
 176 F.3d 610 (2d Cir.1999). Luckey Platt and Burstin shared the common goal of obtaining a judgment against Kalka, and the Bankruptcy Court found — at the urging of Luckey Platt — that Kornstein was best able to procure that judgment. “Bankruptcy judges’ findings on conflict of interest questions are entitled to deference because a bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.”
 
 In re AroChem Corp.,
 
 176 F.3d 610, 628 (2d Cir.1999) (internal quotation marks omitted). The manner in which the judgment was allocated in the
 
 *539
 
 Appellate Division was rendered irrelevant by the fact that the parties had vested the Bankruptcy Court with the authority to divide the recovery between Luckey Platt and Burstin. “[W]here the interest of the special counsel and the interest of the estate are identical
 
 with respect to the matter for which special counsel is retained,
 
 there is no conflict and the representation can stand.”
 
 Id.
 
 at 622. As a result, we agree with the District Court that, by virtue of the escrow order, “[t]he conflict alleged by plaintiff did not exist, and could not exist.”
 

 The question remains whether, even if the canonical conflict was cured, Kornstein’s arguments for affirmance in the Appellate Division breached his fiduciary duty to Luckey Platt. We believe that Kornstein’s arguments on appeal were not improper. The parties and the Bankruptcy Court were aware that Kornstein would argue for Burstin to be awarded the judgment: not only had Kornstein already made that argument in his brief, but Kalka and Bank Leumi challenged Kornstein’s appointment on that very ground. Thus, the Bankruptcy Court — and Luckey Platt — were made aware that Kornstein would seek to affirm the judgment on appeal. Moreover, that approach made eminent sense. Kornstein, representing the appellee, could not have been expected to argue for anything but affirmance. It was probably a wise litigation strategy simply to argue for affirmance — to get the money — rather than argue for a reallocation of the judgment, especially since Kornstein knew that the Appellate Division’s allocation would give way to the Bankruptcy Court’s consensual dominion over the recovery. It is hard to imagine what else Kornstein could have done in the state court, and no reasonable alternatives have been suggested by Kittay.
 
 [5]
 

 Kittay asserts that, even though the Bankruptcy Court reserved the right to divide the judgment, it mattered in whose favor the Appellate Division granted judgment, because the fact that the judgment was in Burstin’s name meant that Kalka was forced to settle with Burstin rather than with Luckey Platt. This assertion, however, misses the point. The settlement constituted proceeds of the judgment, and the Bankruptcy Court ordered that the proceeds be placed in escrow. Accordingly, whether Kalka settled with Burstin or with Luckey Platt, the money was to be placed in the common pot for later allocation by the court. As a result, as the District Court found, “it did not matter in whose favor the Appellate Division would grant judgment.”
 

 Given that ultimately there was no conflict between the interests of Luckey Platt and Burstin during the course of the state court appeal, we agree that Kittay’s allegations do not state a claim for relief. Under the Code of Professional Responsibility, at the time the events of this case occurred, a lawyer could represent multiple clients “if it [was] obvious that the lawyer [could] adequately represent the interest of each and if each consented] to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer’s independent professional judgment on behalf of each.” N.Y.Code of Professional Responsibility DR 5-105(c),
 
 reprinted in
 
 N.Y. Jud. Law App. (McKinney 1992). In our view, it was obvious, at the time, that Kornstein could adequately represent both Luckey Platt and Burstin, since the retention order placed the allocation of any judgment in the hands of the Bankruptcy Court.
 
 *540
 
 Moreover, it is quite clear that Luckey Platt consented to the dual representation after full disclosure of the advantages and risks involved. The Bankruptcy Court held a full hearing, and Luckey Platt argued for the retention of Kornstein.
 

 The retention and escrow order also enabled the appointment to avoid running afoul of bankruptcy law. Title 11, section 327(e) of the United States Code allows the appointment of counsel to assist the trustee for a specified special purpose, if counsel does not represent an interest adverse to the estate.
 
 [6]
 
 The Bankruptcy Court here found that most of the interests of Luckey Platt and Burstin were the same, and that, absent Kornstein, Luckey Platt would be unable effectively to pursue its claims against Kalka.
 
 [7]
 
 This finding is accorded deference.
 
 See AroChem,
 
 176 F.3d at 628. The escrow order meant that Burstin’s interests in defending the state court appeal were not adverse to the estate.
 
 Cf. id.
 
 at 627 (noting that retention of law firm as special counsel is proper where there is an identity of interests between the trustee and special counsel’s former client with respect to the specific matter for which special counsel is retained);
 
 In re American Avia Assoc.-SEA,
 
 150 B.R. 24, 28 (Bankr.S.D.Tex.1992) (allowing retention of law firm as special counsel to represent debtor and other related entities, some of which had also filed for bankruptcy, in state court litigation against some of debtor’s joint venturers because case represented potentially major asset of bankruptcy estate and relief had been carefully structured to avoid conflict of interest).
 

 While we hold that the Bankruptcy Court’s escrow order effectively resolved any conflict of interest, the court’s actions in this case may not be appropriate in all cases. Here, the conflict resolution was sufficient to cover the lawyer in his arguments before the Appellate Division, but, as we now know, did not protect Luckey Platt. “[G]iven the .fact-specific nature of parties’ interests and their alignments ... no general rule of simple application [regarding the retention of special counsel] ... can be gleaned. Rather, each case must finally turn on its own circumstances, based on a common-sense divination of adversity or commonality.”
 
 AroChem,
 
 176 F.3d at 626-27 (internal quotation marks and citations omitted). Thus, we encourage courts to be aware of the myriad complications that can arise in conflict situations and to craft resolutions with prudence and utmost sensitivity for potential misstep by litigants and their counsel.
 

 In any event, the settlement proceeds were not placed in the escrow account. This, however, could not have been the result of Kornstein’s appointment or his arguments on appeal, but rather — assuming the truth of Kittay’s allegations — was the result of the events that took place
 
 after
 
 appeal. Accordingly, we affirm the District Court’s dismissal of the complaint insofar as it alleged improprieties in Korn-stein’s dual representation of Luckey Platt and Burstin during the state court appeal.
 

 II.
 
 Dismissal as to Claims Regarding Kornstein’s Alleged Post-Appeal Actions
 

 As discussed above, by virtue of the Bankruptcy Court’s escrow order,
 
 *541
 
 Kornstein’s representation of both Luckey Platt and Burstin, and Kornstein’s arguments in the state court appeal, could not have prevented Luckey Platt from recovering any judgment to which it was entitled. Kornstein’s alleged conduct after the Appellate Division ruling, however, presents a different story. The District Court observed that the funds recovered from Kalka never reached the escrow account, and found that “if, as plaintiff appears to allege, defendants substantially contributed to that result, a legally sufficient claim for relief against defendants can be stated.” Nonetheless, the court dismissed Kittay’s allegations regarding Kornstein’s post-appeal conduct, finding that the allegations were not pleaded in a “clear and straight-forward fashion.” We conclude that the allegations were sufficient to state claims for relief.
 
 [8]
 

 Given its observation that Kittay’s allegations could state a claim for relief, the District Court must have found the allegations deficient only in their form. Thus, while the court dismissed Kittay’s complaint for failure to state a claim under Rule 12(b)(6), it appears that its dismissal of the complaint with regard to the post-appeal allegations was actually based on Kittay’s failure to satisfy Federal Rule of Civil Procedure 8, regarding “General Rules of Pleading.” We review a district court’s dismissal of a complaint for failure to comply with Rule 8 for abuse of discretion.
 
 [9]
 

 See Simmons v. Abruzzo,
 
 49 F.3d 83, 87 (2d Cir.1995).
 

 Federal Rule of Civil Procedure 8 requires a complaint to contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2). The Rule also requires that “[e]ach averment of a pleading shall be simple, concise, and direct.” Fed.R.Civ.P. 8(e)(1). Under the Rules’ liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant “to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.”
 
 Ricciuti v. New York City Transit Auth.,
 
 941 F.2d 119, 123 (2d Cir.1991). “Dismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.”
 
 Salahuddin v. Cuomo,
 
 861 F.2d 40, 42 (2d Cir.1988).
 

 We find that the District Court exceeded its allowable discretion in dismissing Kittay’s complaint for failure to comply with Rule 8. As a preliminary observation, if the court understood the allegations sufficiently to determine that they could state a claim for relief, the complaint has satisfied Rule 8. More importantly, in our view, the complaint’s allegations are more than sufficiently clear “to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.”
 
 Id.
 
 (noting principal function of pleadings under Federal Rules). Kittay alleged specifically that “Burstin Investors and the Kornstein Firm plotted to conceal the Israeli settlement and then to evade the escrowing provision via a dismissal of the entire bankruptcy case.... ” Kittay also alleged that Kornstein “actively assisted] in [Klagsbald’s] litigation and collection efforts
 
 on behalf of Burstin Investors
 
 against Kalka in Israel”; that “[h]ad Defendants acted properly on behalf of the Debtor ... [the] judgment could have been enforced against Kalka via legal action in Israel ..., with the result
 
 *542
 
 that what should have been Luckey Platt’s ... judgment would have been paid in full”; that Defendants breached their fiduciary duties by “representing Burstin Investors in its collection efforts against Kal-ka when [they] knew, or should have known, that successful collection efforts on behalf of Burstin Investors would likely prevent the Debtor from recovering any money on those portions of the modified State Court Judgment in its favor”; and that Kornstein “neglect[ed] to advise the Debtor and its principals of their duty to enforce the $91,380 portion of the State Court Judgment awarded in its favor.” These allegations are sufficiently clear to have provided Kornstein with “a fair understanding of what the plaintiff is complaining about” and to have allowed Korn-stein “to know whether there is a legal basis for recovery.”
 
 Ricciuti,
 
 941 F.2d at 123.
 

 In dismissing the complaint, the District Court noted that “[a]t this point in the litigation, I am not able to decide if the deficiency in recovery by the bankrupt estate is the result of unlawful or improper actions by Kornstein, or plaintiffs own failures to advance the bankrupt’s interests in Israel against Kalka and Burstin Investors.” But at this stage in the litigation, the court need not make that determination, for that seems to be the ultimate issue in the case.
 
 [10]
 
 “Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage.”
 
 Id.
 
 at 123-24;
 
 cf. Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (“[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.”).
 

 Finally, we find it significant that Kornstein did not argue below that the complaint was confusing. While a district court may dismiss a complaint for failure to comply with Rule 8
 
 sua sponte, see Simmons,
 
 49 F.3d at 86, we have nonetheless reversed a dismissal after observing that the defendants “did not even remotely suggest that the amended complaint failed to comply with Rule 8, or that it did not give them notice of the substance of [the plaintiffs] claims, or that it was otherwise unintelligible.”
 
 Id.
 
 at 87. As in
 
 Simmons,
 
 here the defendants “promptly answered” the complaint, thereby demonstrating that it was not “unintelligible.”
 
 Id.
 
 at 87-88.
 

 Although a district court is accorded significant deference in dismissing a complaint under Rule 8, the court here exceeded its allowable discretion in dismissing the complaint insofar as it alleged misconduct in the actions Kornstein took after the decision in the Appellate Division. Accordingly, we vacate that portion of the District Court’s judgment and remand for further proceedings.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the dismissal of the plaintiffs complaint insofar as it alleges an impermissible conflict of interest, but we vacate the dismissal of the plaintiffs complaint insofar as it alleges improper conduct on the part of the defendants after appeal in the state court action. We accordingly remand for further proceedings. Each party shall bear its own costs on this appeal.
 

 [1]
 

 . KNIL still had a partnership interest in Luckey Platt.
 

 [2]
 

 . Federal bankruptcy courts sitting in New York apply New York's Code of Professional Responsibility to ethical disputes.
 
 See, e.g., In re Allboro Waterproofing Corp.,
 
 224 B.R. 286,
 
 *538
 
 291 n. 3 (Bankr.E.D.N.Y.1998);
 
 In re Caldor, Inc.,
 
 193 B.R. 165, 178 (Bankr.S.D.N.Y.1996).
 

 [3]
 

 . The Code of Professional Responsibility "consists] of three separate but interrelated parts: Canons, Ethical Considerations, and Disciplinary Rules.” N.Y.Code of Professional Responsibility Preliminary Statement,
 
 reprinted in
 
 N.Y. Jud. Law App. (McKinney 2000). The Canons are "statements of axiomatic norms.”
 
 Id.
 
 The Ethical Considerations are "aspirational in character and represent the objectives toward which every member of the profession should strive.”
 
 Id.
 
 The Disciplinary Rules "are mandatory in character.”
 
 Id.
 
 They "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.”
 
 Id.
 

 [4]
 

 . The New York Code of Professional Responsibility was amended effective June 30, 1999. Disciplinary Rule 5-105(c) now provides that "a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved.” N.Y. Comp Codes R. & Regs. tit. 22, § 1200.24 (2000). This amendment does not apply here.
 

 [5]
 

 . Kittay suggested at oral argument that Kornstein should have asked the Appellate Division to transfer some of the judgment from Burstin to Luckey Platt. It is not clear what this would have accomplished, since the Appellate Division’s allocation of the judgment would not have been binding on the Bankruptcy Court. Moreover, as a practical matter, there was a judgment and the appeal had been fully briefed. Any change in course by Kornstein would have initiated a state court remand with its attendant delay and uncertainty for the estate.
 

 [6]
 

 . Title 11, section 327(e) of the United States Code provides:
 

 The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
 

 11 U.S.C. § 327(e).
 

 [7]
 

 . As a creditor, Bank Leumi had the right to object to Kornstein’s retention. The Bankruptcy Court's determination that Luckey Platt and Burstin did not hold adverse interests entitled it to approve the retention over such objection.
 
 See, e.e., AroChem,
 
 176 F.3d at 628.
 

 [8]
 

 . Kittay’s disclaimer of intent to amend the complaint renders the District Court's judgment final and allows review of the dismissal in this Court.
 
 See DiVittorio v. Equidyne Extractive Indus., Inc.,
 
 822 F.2d 1242, 1247 (2d Cir.1987);
 
 Connecticut Nat’l Bank v. Fluor Corp.,
 
 808 F.2d 957, 960-61 (2d Cir.1987).
 

 [9]
 

 . Since the standard of review with respect to a Rule 8 dismissal is more deferential to the district court than with respect to a Rule 12(b)(6) dismissal, our decision to vacate would obviously stand if we viewed the dismissal as one under Rule 12(b)(6).
 

 [10]
 

 . There is a certain unavoidable vagueness in the complaint, because it is hard to allege what sum would have been allocated to Luck-ey Platt if the amounts collected from Kalka had been (as they should have been) placed in escrow.